DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of a judgment of the Lucas County Court of Common Pleas which granted appellee Lucas County Port Authority's motion for summary judgment on a breach of contract claim against appellant Childers Limousine Service. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Appellant began providing ground transportation services at Toledo Express Airport in December 2001, as part of an agreement with appellee. In February 2002, the parties entered into the written agreement for these services titled Concession Agreement for Ground Transportation Toledo Express Airport ("the contract"). The scope of services provision in the contract provided:
 {¶ 3} "* * * Childers shall have the exclusive right to solicit passengers for ground transportation at the Airport. This Agreement, however, shall not restrict the Port Authority's right to grant transportation privileges to hotel/motel courtesy vehicles and other transportation providers from picking up or dropping off passengers due to the passenger's direct hire of such vehicle or company."
 {¶ 4} In exchange, appellant was required to pay to appellee concession fees consisting of an annual fee payable in monthly installments, as well as an additional fee based on appellant's gross revenue. The flat annual portion of the fees increased incrementally over a five year option period. The original term of the contract was for one year commencing December 1, 2001 and ending November 30, 2002, with an option to extend the contract each year up to four additional years.
 {¶ 5} Although some months were paid late, appellant substantially paid the concession fees up through November 2003. Toledo Area Regional Transit Authority ("TARTA") began to operate a bus route at the airport in December 2003. Appellant ceased providing ground transportation services at the airport in January 2005. *Page 3 
 {¶ 6} On August 16, 2005, appellee filed a complaint alleging that appellant was in default of its concession fees obligation to appellee. Appellant filed an answer and counterclaim for appellee's alleged breach of the exclusivity clause by allowing other transportation providers access to the airport.
 {¶ 7} Appellee filed a motion for summary judgment and appellant filed an opposition. In a September 21, 2006 opinion and judgment entry on the summary judgment issues presented, the trial court found that appellant had failed to present evidence sufficient to establish that TARTA's operations at the airport caused its default of the contract. The court further found that appellee did not breach the scope of services provision contained in the contract. Therefore, summary judgment was granted to appellee.
 {¶ 8} In its assignment of error, appellant asserts:
 {¶ 9} "I. THE TRIAL COURT ERRED IN GRANTING APPELLANT'S [SIC] MOTION FOR SUMMARY JUDGMENT BECAUSE
 {¶ 10} "A. GENUINE ISSUES OF MATERIAL FACT REMAINED TO BE LITIGATED,
 {¶ 11} "B. APPELLEE WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW, *Page 4 
 {¶ 12} "C. FROM THE EVIDENCE, CONSTRUED MOST STRONGLY IN APPELLANT'S FAVOR, IT WAS NOT APPARENT THAT REASONABLE MINDS COULD COME TO BUT ONE CONCLUSION, WHICH CONCLUSION WAS ADVERSE TO APPELLANT."
 {¶ 13} Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 14} The interpretation of a contract is an issue of law, not of fact, to be determined by the court. Graham v. Dry dock Coal Co. (1996),76 Ohio St.3d 311, 313. *Page 5 
Contracts are to be interpreted to achieve the intent of the parties.Skivolocki v. . E. Ohio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Additionally, "where the terms in an existing contract are clear and unambiguous, th[e] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 246.
 {¶ 15} Appellant argues that there remain material questions of fact regarding: (1) the extent of the impact of the competition from TARTA on appellant's ridership and revenue; (2) appellee's power to regulate the solicitation of ground transportation passengers at the airport, and (3) whether TARTA's activities at the airport constituted "soliciting" passengers for ground transportation. In reply, appellee asserts that appellant failed to present evidence sufficient to meet the requirements of Civ.R. 56(E) on any of these issues. In addition, appellee argues that the "direct-hire" exception to the exclusivity clause is broad enough to encompass TARTA's activities at the airport.
 {¶ 16} With regard to the first issue, appellant cites the affidavit of appellant's owner, John Childers, for its contention that it was adversely affected by TARTA's "solicitation" of passengers at the airport. In his affidavit, Childers states that TARTA's activities at the airport, "adversely affected the business revenues and profits of Childers Limousine Service." We agree with the trial court that the affidavit merely sets forth *Page 6 
legal conclusions or opinions without supporting facts, and thus, is insufficient to meet the requirements of Civ.R. 56(E).
 {¶ 17} Appellant argues that it had run records available on this issue as supporting facts. However, this "run record" document was not produced with appellant's opposition to summary judgment. Instead, this document was merely listed in appellant's trial brief as one that would be an exhibit if the case went to trial. The record contains no supporting facts relative to TARTA's presence adversely affecting appellant's ridership.
 {¶ 18} Regarding the second issue, appellant cites Boykin Enterprises,Inc. v. City of Columbus (Feb. 10, 1977), 10th Dist. No. 76AP-497, as support for its contention that appellee had the power — and the duty under the contract — to regulate the solicitation of passengers for ground transportation at the airport. Boykin involved regulation of advertising at the Columbus airport. In response, appellee cites the affidavits of James Gee, General Manager for TARTA, and Paul Toth, Airports Director for appellee as support for its contention that appellee had no authority to deny TARTA access to the airport. Appellee also cites a more recent case, International Flight Ctr. v. City ofMurfreesboro (Tenn.App.2000), 45 S.W.3d 565, that it claims is on point relative to the requisite public access at the airport under federal law.
 {¶ 19} In Murfreesboro, a corporation that operated a flight school and aircraft maintenance shop at the airport alleged breach of an exclusivity provision in a lease with the city when another entity that provided off-site flight classes began renting tie-down spaces at the airport and used other public areas of the airport. The court cited 49 U.S.C. *Page 7 
§ 47107(a)(4) (1997 Supp. 2000), and found that under the exclusivity provision, the parties understood that the prohibited competitive activity "* * * did not include the simple use of the Airport by members of the public which, under federal law, cannot be prohibited by the City or the Airport." Id. at 571. The court concluded that when read in light of the laws governing the operation of public airports, the word "operate," as used by the parties, did not mean to include the activities that the second entity conducted at the Airport and the City did not breach the lease agreement by allowing it to use the Airport's facilities and services.
 {¶ 20} Although not binding on this court, we find the analysis inMurfreesboro instructive. We find likewise, that pursuant to the laws governing the operation of public airports, appellee may not have had the power to deny TARTA access to the airport. Further, when read in light of these laws, the word "solicit," as used by the parties, did not mean to include the activities that TARTA, a public transportation provider, conducted at the airport and appellee did not breach the contract by allowing it to have access to the airport.
 {¶ 21} Finally, we must consider whether there were questions of fact relative to whether TARTA was "soliciting" ground transportation passengers within the meaning of the contract. Appellee submitted the affidavits of two drivers employed by appellant and again, the affidavit of owner John Childers. Both drivers stated that they observed TARTA employees "soliciting" passengers and TARTA vehicles "staged" at the airport. *Page 8 
Likewise, Childers stated that TARTA did "solicit" passengers for ground transportation and "had space to conduct staging activities" for ground transportation at the airport.
 {¶ 22} In opposition, appellee cites the affidavits of Gee and Toth. Both stated that, unlike appellant, TARTA was not given any space or desk inside the terminal to solicit passengers and no TARTA employees were permanently stationed at the airport. Both also stated that TARTA employees did not solicit passengers to utilize TARTA bus service in lieu of cab or limousine service. We find that given the undisputed differences in the nature of TARTA's operations at the airport compared to appellant's, TARTA did not "solicit" passengers. Further, again, pursuant to the laws governing the operation of public airports, the word "solicit," as used by the parties, did not mean to include the activities that TARTA, a public transportation provider, conducted at the airport.
 {¶ 23} Due to our findings on appellant's arguments, we find appellee's last argument that the "direct-hire" exception to the exclusivity clause is broad enough to encompass TARTA's activities at the airport moot, and we do not address it. We conclude that even when all the evidence presented for summary judgment is construed most favorably for appellant, reasonable minds could reach only the conclusion that appellee did not breach the scope of services provision of the contract. Appellant's assignments of error are not well-taken.
 {¶ 24} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App .R. *Page 9 
24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFRIMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J., CONCUR. *Page 1